UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BENJAMIN RICARDO RAGAN,

        Petitioner,                                   Case Number: 04-CV-71913

v.                                                    HONORABLE PAUL D. BORMAN

DOUGLAS C. VASBINDER,

        Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS AND (2) DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY**

      Petitioner Benjamin Ricardo Ragan has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, who is currently incarcerated at the G. Robert Cotton Correctional Facility in Jackson, Michigan, challenges his convictions for first-degree murder and home invasion. For the reasons set forth below, the Court denies the petition.

**I. Facts**

      Petitioner's convictions arise out of the stabbing death of Lindsey Matthews in the apartment she shared with Theresa Tafoya. Sergeant David Egeler of the Washtenaw County Sheriff's Department testified that he responded to a call at an apartment complex in Ypsilanti Township at approximately 4:00 a.m., on July 17, 1999. Sergeant Egeler was directed to an apartment, the door of which had been forced inward. Upon entering the apartment, Sergeant Egeler proceeded to a bedroom where he found a woman later

identified to be Lindsey Matthews, lying on the floor, surrounded by blood. She appeared to have been stabbed in the head and abdomen. He determined that she was dead. On the floor near her body, he found a barbecue-style kitchen fork with blood on it. Outside on the ground underneath the apartment's balcony, deputies found two knives.

A deputy sheriff testified that a tracking dog led the deputies from a boot print near the knives to an apartment complex located at 831 Green Road. The deputy sheriff noticed that one of the windows to an apartment had been pried open and had blood on it. That apartment was home to Petitioner and his brother Cornell Stricklan.

Sheriff's Deputy Joseph Crova testified that, on July 17, 1999, he stopped a vehicle in the parking lot of the apartment complex where Matthews' body was found. He had been informed that a suspect in the murder was believed to be in the vehicle. Petitioner was seated in the passenger seat and placed under arrest for having an open container of alcohol in the vehicle. A bloody screwdriver was recovered from under the passenger seat. Petitioner's boots were also confiscated.

Marcus Mackey testified that, on the evening of the murder, he was visiting Ronald Lucas, who lived in an apartment across the hall from Matthews. Cornell Stricklan was also at Lucas' apartment. Petitioner stopped by the apartment briefly, but then left. Mackey testified that, at approximately 1:00 a.m., he went to the apartment shared by Matthews and Theresa Tafoya. Stricklan joined him there, but Petitioner did not. At some point, Stricklan punched Tafoya, knocking her to the floor. Mackey testified that he confronted Stricklan who then punched him. Another man, Edward

Harris then hit Stricklan with a chair. Stricklan fled the apartment but yelled that he would be back. Mackey left the apartment to change clothes. He and Ed Harris returned ten to twenty minutes later. Mackey rang the buzzer by the front door, but no one let them in. He looked through a glass panel by the front door and saw Petitioner exit Matthews' apartment. He also heard Petitioner's voice. When he and Harris were finally able to enter the apartment building, he ran upstairs and found Matthews lying in her bedroom.

State Police chemist Lynne Helton testified that she conducted DNA analysis of several blood samples. She testified that the genetic profile of the blood found on the screwdriver matched that of Lindsey Matthews. The genetic profile of blood found on Petitioner's boots also matched that of Matthews.

## II. Procedural History

Following a jury trial in Washtenaw County Circuit Court, Petitioner was convicted of first-degree premeditated murder, felony murder, and first-degree home invasion. On July 18, 2000, he was sentenced to life imprisonment for the first-degree murder conviction and nine to twenty years imprisonment for the first-degree home invasion conviction. The trial court vacated the felony-murder conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

    I.    The circuit judge committed reversible error in denying Benjamin Ragan's motion to suppress because the evidence concerning Ragan's boots was obtained in violation of due process and as the result of the illegal

>      confiscation of the boots at the sheriff's department without probable cause and without a warrant.
>
> II.   All evidence obtained as the result of the stop of the car and the first arrest of Benjamin Ragan, including the boots, screwdriver, and Ragan's statements, should have been suppressed as the result of the violation of due process and the illegal seizure of Ragan without probable cause and without a warrant.
>
> III.  Defense counsel John Minock was ineffective in not moving to suppress the evidence obtained as a result of the illegal first stop and arrest of Benjamin Ragan.
>
> IV.   The circit judge violated defendant Ragan's constitutional right to cross-examine Marcus Mackey, a major prosecution witness, and committed reversible error by relying on the court rule in prohibiting defendant from impeaching Mackey's credibility with his CSC conviction, for which he was still on probation, thus giving him a bias and motive to favor the prosecution.

The Michigan Court of Appeals affirmed the convictions. People v. Ragan, No. 229922 (Mich. Ct. App. Sept. 17, 2002).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, presenting the same claims presented to the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. People v. Ragan, No. 122439 (Mich. March 31, 2003).

Petitioner then filed the pending petition for a writ of habeas corpus, presenting the same claims presented on direct review in state court.[1]

---

[1] In his reply to Respondent's answer in opposition to his petition, Petitioner references claims which were raised in a Motion to Remand filed in the Michigan Court of Appeals, but not presented in the petition filed in this Court. Petitioner has not sought leave to amend his petition to include these additional claims. Fed. R. Civ. P. 15(a). Therefore, the Court considers only those claims presented in the petition.

### III. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA") applies to all habeas petitions filed after the effective date of the act, April 24, 1996. Because Petitioner's application was filed after April 24, 1996, the provisions of the AEDPA, including the amended standard of review, apply to this case.

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. Franklin v. Francis, 144 F.3d 429 (6th Cir. 1998). Additionally, this court must presume the correctness of state court

factual determinations. 28 U.S.C. § 2254(e)(1)[2]; *see also* Cremeans v. Chapleau, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." Id. at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .

---

[2] 28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

6

> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

Id. at 410-11.

### IV.  Analysis

### A.  Fourth Amendment Claims

In his first two claims for habeas corpus relief, Petitioner argues that the state court improperly admitted evidence seized in violation of the Fourth Amendment.

The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." Stone v. Powell, 428 U.S. 465, 494-95 (1976). The Sixth Circuit Court of Appeals utilizes a two-step analysis to determine whether a defendant was given a full and fair opportunity to litigate a Fourth Amendment claim in state court:

> First, the court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism.

Machacek v. Hofbauer, 213 F.3d 947, 952 (6th Cir. 2000) (internal quotations omitted).

Petitioner raised a Fourth Amendment claim in state court, and that claim was the

subject of a suppression hearing. Following the hearing, the trial court denied the motion to suppress. Petitioner then appealed his conviction to the Michigan Court of Appeals, presenting several Fourth Amendment claims. The Michigan Court of Appeals addressed the claims in a lengthy opinion and found no Fourth Amendment violation. People v. Ragan, No. 229922 (Mich. Ct. App. Sept. 17, 2002). Petitioner filed an application for leave to appeal in the Michigan Supreme Court, again presenting his Fourth Amendment claims. The Michigan Supreme Court denied leave to appeal. People v. Ragan, No. 122439 (Mich. March 31, 2003).

Petitioner's claim that his attorney should have raised additional Fourth Amendment claims in the trial court does not render the state procedural mechanism inadequate nor does it demonstrate a failure of that mechanism. Based upon the foregoing, this Court concludes that Petitioner was provided an opportunity for full and fair litigation of his Fourth Amendment claims in the Michigan courts. Consequently, these claims are not cognizable on habeas review.

## B. Alleged Ineffective Assistance of Counsel

Petitioner next alleges that he received ineffective assistance of counsel because hit trial attorney failed to file a motion to suppress the boots and screwdriver on the ground that the officer's initial stop of the vehicle in which Petitioner was a passenger was unlawful. Petitioner's attorney sought suppression of the boots only on the ground that the seizure of the boots at the sheriff's department was unlawful.

"The essence of an ineffective-assistance claim is that counsel's unprofessional

errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." Kimmelman v. Morris, 477 U.S. 365, 374 (1986). To establish ineffective assistance of counsel, a petitioner must show both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced petitioner. Strickland v. Washington, 466 U.S. 668, 687 (1984) "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman, 477 U.S. at 375. There is a strong presumption that counsel's performance falls "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. While the Court may not review Petitioner's Fourth Amendment claim as an independent claim warranting relief on habeas review, the Court must consider the merits of the claim in order to determine whether counsel was ineffective in failing to litigate it.

The Michigan Court of Appeals held that Petitioner's counsel was not ineffective because the evidence which Petitioner argued counsel should have moved to suppress was properly admitted. The state court held that "trial counsel is not ineffective for failing to advocate a meritless position." Ragan, slip op. at 3, n.3. The Michigan Court of Appeals held that the investigatory stop of the vehicle was justified because the police had a "'particularized suspicion, based on an objective observation, that the person stopped has

9

been, is, or is about to engage in criminal wrongdoing.'" Ragan, slip op. at 2, quoting People v. Peebles, 216 Mich. App. 661, 665 (1996).  Under Michigan law, an appellate court reviews "a stop, search, or seizure of a motor vehicle and its contents to determine whether it was reasonable under the facts and circumstances of the case." Id.  The state court of appeals held that, in this case, the stop of the vehicle was reasonable in light of the following circumstances:

> [A] police officer was at defendant's apartment searching for evidence in connection with the homicide.  The officer was aware that defendant was a suspect in the homicide.  The officer had seen a photograph of the defendant and had been provided a description of him.  The officer saw a car drive through the parking lot, and the passenger in the car resembled defendant.  The officer noted that he was in plainclothes and driving an unmarked car, so he directed another officer to stop the car.  Under the facts and circumstances of the case, we do not believe that it was at all unreasonable for the police officer to have the vehicle stopped to determine whether the passenger was, in fact, defendant.

Ragan, slip op. at 2.

Petitioner also argued that his arrest for having an open intoxicant was illegal because the bottle was empty.  The Michigan Court of Appeals held that, even assuming that the empty beer bottle could not justify the arrest, the police officer had reasonable cause to believe a felony had been committed and that Petitioner was the person who committed it, thereby justifying his arrest under Michigan law.  Id.

Petitioner has failed to show that the Michigan Court of Appeals' application of Michigan law to determine that a motion to suppress would have been meritless was incorrect.  Therefore, Petitioner's Fourth Amendment claims lacked merit and he cannot

establish that his attorney was ineffective for failing to raise them.

### C.  Right of Confrontation

Finally, Petitioner alleges that his right of confrontation was violated by limitations placed by the trial court on his cross-examination of witness Marcus Mackey.  Petitioner sought to cross-examine Mackey regarding the fact that he was serving a term of probation for a criminal sexual conduct crime at the time he testified against Petitioner.

The Sixth Amendment to the Constitution guarantees an accused in a criminal prosecution the right "to be confronted with the witnesses against him."  "The Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas*, 380 U.S. 400, 403 (1965).  The rights of confrontation and cross-examination "have ancient roots" which the "Court has been zealous to protect . . . from erosion."  Id., at 404-05 (internal quotation omitted).  The right to a trial by jury is predicated upon the belief "'that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross examination, and of counsel.'"  Id. at 405, *quoting* Turner v. State of Louisiana, 379 U.S. 466, 472-73 (1965).

In determining whether the exclusion of evidence or restrictions on cross-examination infringe upon a weighty interest of the accused, the court's role is not to determine whether the excluded evidence would have caused the jury to reach a different result.  Davis v. Alaska, 415 U.S. 300, 317 (1973).  Instead, the question is whether the

defendant was afforded "'a meaningful opportunity to present a complete defense.'" Crane v. Kentucky, 476 U.S. 683, 690 (1986), *quoting* California v. Trombetta, 467 U.S. 479, 485 (1984).  The prosecutor's case must "encounter and 'survive the crucible of meaningful adversarial testing.'" Id. at 690-691 (1984), *quoting* United States v. Cronic, 466 U.S. 648, 656 (1984).

The Supreme Court has "distinguished between a 'general attack' on the credibility of a witness – in which the cross-examiner 'intends to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony' – and a more particular attack on credibility 'directed toward revealing possible biases, prejudices, or ulterior motives as they may relate directly to issues or personalities in the case at hand.'" Boggs v. Collins, 226 F.3d 728, 736 (6th Cir. 2000), *cert. denied* 532 U.S. 913 (2000), *quoting* Davis, 415 U.S. at 316.  Thus, "cross-examination as to bias, motive or prejudice is constitutionally protected, but cross-examination as to general credibility is not." Id. at 737, *citing* Olden v. Kentucky, 488 U.S. 227, 232 (1988).

The Michigan Court of Appeals held that the testimony was properly excluded because it was inadmissible under Michigan Rule of Evidence 609(a).  Petitioner has failed to show that the trial court's refusal to permit him to cross-examine Mackey regarding an incident that occurred he was sixteen-years-old, deprived him of "'a meaningful opportunity to present a complete defense.'" Crane, 476 U.S. at 690, *quoting* Trombetta, 467 U.S. at 485.  This incident may have been relevant to Mackey's *general*

credibility, but did not bear upon "possible biases prejudices, or ulterior motives as they may [have related] to issues or personalities in the case at hand." Boggs, 226 F.3d at 736. Thus, the Court concludes that Petitioner's right of confrontation was not violated by the limitations placed on cross-examination of Mackey.

## V. Certificate of Appealability

Finally, the Court addresses whether any of Petitioner's claims warrant the issuance of a certificate of appealability. Before Petitioner may appeal the Court's dispositive decision denying his petition, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(B); Fed. R. App. P. 22(b). The Court must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); In re Certificates of Appealability, 106 F.3d 1306, 1307 (6th Cir. 1997).

"When a habeas applicant seeks permission to initiate appellate review of the dismissal of his petition," a federal court should "limit its examination to a threshold inquiry into the underlying merit of his claims." Miller-El v. Cockrell, 123 S.Ct. 1029, 1039 (2003). A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

The Court concludes that reasonable jurists would not find the Court's assessment

of Petitioner's claims to be debatable or wrong. Accordingly, the Court holds that Petitioner is not entitled to a certificate of appealability.

## VI.  Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.


**s/Paul D. Borman**
**PAUL D. BORMAN**
**UNITED STATES DISTRICT JUDGE**

**Dated:  January 27, 2006**

### CERTIFICATE OF SERVICE

**Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on January 27, 2006.**


**s/Jonie Parker**
**Case Manager**